# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

TARA S.,

Plaintiff,

   - v -

NANCY A. BERRYHILL, *Acting Comm'r of Soc. Sec.*,

Defendant.

Civ. No. 1:17-CV-1371
(DJS)

---

**APPEARANCES:**

DENNIS KENNY LAW
Counsel for Plaintiff
288 North Plank Road
Newburgh, NY 12550

U.S. SOCIAL SECURITY ADMIN.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**OF COUNSEL:**

JOSEPHINE GOTTESMAN,
ESQ.

FERGUS J. KAISER, ESQ.

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>DECISION and ORDER</u>[1]

Currently before the Court, in this Social Security action filed by Tara S. against the

Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are

Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on

---

[1] Upon Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

the Pleadings. Dkt. Nos. 10 & 13. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **granted**, and Defendant's Motion for Judgment on the Pleadings is **denied**, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff was born on May 21, 1980. Dkt. Nos. 7 & 7-1, Admin. Tr. ("Tr."), p. 98.[2] She completed ninth grade, and has past work as a cashier, daycare operator, housekeeper, and receptionist. Tr. at pp. 99 & 211. Plaintiff alleges a disability onset date of December 13, 2012. Tr. at p. 206.

Plaintiff originally filed her claim for Supplemental Security Disability on April 16, 2014, alleging PTSD, Bipolar Disorder, Borderline Personality Disorder, General Anxiety Disorder, OCD, and Insomnia. Tr. at p. 120. Plaintiff's application was denied on August 7, 2014, and Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Vincent M. Cascio on April 19, 2016. Tr. at pp. 92-119 & 137. Plaintiff was represented by counsel and testified at the hearing. Tr. at pp. 92-118. On November 8, 2016, ALJ Cascio issued an unfavorable decision finding Plaintiff not disabled. Tr. at pp. 7-31. On October 24, 2017, the Appeals Council concluded there was no basis to review the ALJ's

---

[2] Due to the length of the administrative transcript, it is contained in two docket entries, with consecutive bates stamp page numbering that continues between the two entries. As they contain consecutive page numbering, they will both be referred to as "Tr." herein, along with the corresponding bates stamped page number.

decision, thus rendering the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6. This action followed.

## B. The ALJ's Decision

In his determination, ALJ Cascio found that Plaintiff had not engaged in substantial gainful activity since April 16, 2014, the application date. Tr. at p. 12. He found that Plaintiff had the following severe impairments: learning disorder; rule out bipolar I disorder; bipolar II disorder; rule out panic disorder; posttraumatic stress disorder ("PTSD"), opioid use disorder; unspecified personality disorder; episodic mood disorder NOS; cannabis use disorder; and obsessive compulsive disorder ("OCD"). *Id.* He next found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listings 12.04, 12.06, 12.08, and 12.09. Tr. at pp. 13 & 14. The ALJ next found that, based on all of the impairments, including her drug addiction or alcoholism ("DAA"), Plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes or scaffolds and must avoid unprotected heights and hazardous machinery. She can understand, remember and carry out simple, routine, repetitive work-related tasks, with occasional contact with supervisors, the public and coworkers. She should work in a low stress job engaging in occasional decision-making and can adapt to occasional changes in the workplace. This individual will be off-task 15% of the workday in addition to regularly scheduled breaks. This individual will have 3 or more unexcused absences per month.

Tr. at pp. 14-20. The ALJ next found that Plaintiff has no past relevant work, that she was 34 years old, which is defined as a younger individual age 18-49 on the date the application was filed, has a limited education and is able to communicate in English, and that transferability of job skills is not an issue because Plaintiff does not have past relevant work. Tr. at p. 20. The ALJ then found that, considering Plaintiff's age, education, work experience, and RFC based on all of the impairments including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform, based on the testimony of a vocational expert ("VE"). *Id.* ALJ Cascio also concluded that if Plaintiff stopped the substance use, her remaining limitations (PTSD, depressive/affective disorders, anxiety disorder, paranoid personality disorder) would cause more than a minimal impact on her ability to perform basic work activities, and she would therefore continue to have a severe impairment or combination of impairments. Tr. at pp. 21-22. However, the ALJ found that if Plaintiff stopped the substance use, she would then have the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes or scaffolds and must avoid unprotected heights and hazardous machinery. She can understand, remember and carry out simple, routine, repetitive work-related tasks, with occasional contact with supervisors, the public and coworkers. She should work in a low stress job engaging in occasional decision-making and can adapt to occasional changes in the workplace.

Tr. at pp. 22-26. The ALJ found that, if Plaintiff stopped the substance use, considering her age, education, work experience, and RFC, there would be a significant number of jobs in

the national economy that she could perform, based upon the VE's testimony. Tr. at p. 27. The ALJ found that the substance use disorder therefore was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use, and that Plaintiff therefore has not been disabled at any time from the date the application was filed through the date of his decision. *Id.*

## C. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff contends that the ALJ incorrectly determined the materiality of Plaintiff's substance abuse disorder. Dkt. No. 10-1, Pl.'s Mem. of Law, pp. 22-25. Plaintiff contends that the ALJ did not properly consider her severe, longstanding underlying mental health problems in making that determination, and failed to project the severity of Plaintiff's other impairments in the absence of DAA. *Id.* Plaintiff asserts that the record did not establish that her co-occurring mental disorders would improve to the point of non-disability in the absence of DAA, and as such, DAA is not material. *Id.* at p. 25. Plaintiff also contends that the ALJ failed to properly analyze the medical evidence of record, cherry picking from the record to support his determination, and found Plaintiff not fully credible by ignoring substantial evidence that supported her credibility. *Id.* at pp. 25-27. In particular, Plaintiff argues that the ALJ improperly focused on Plaintiff's ability to function in highly structured settings, such as hospitals. *Id.* at p. 24. Finally, Plaintiff contends that she meets or medically equals the Listings at sections 12.04, 12.06, 12.08, and/or 12.09, and that the ALJ failed to consider paragraph C in the Listings. *Id.* at pp. 24 & 27-30. Plaintiff

points to record evidence that conflicts with the ALJ's findings regarding the Listing requirements, and contends that it supports a finding that Plaintiff would meet the Listings, even in the absence of DAA. *Id.*

In response, Defendant contends that the ALJ properly determined that Plaintiff's DAA was a contributing factor material to the disability determination. Dkt. No. 13, Def.'s Mem. of Law, pp. 6-10. Defendant contends that the ALJ properly assessed the evidence of record, and did not improperly cherry pick from the opinion evidence; rather, the ALJ properly credited certain portions of opinions while properly rejecting others. *Id.* at p. 11. In addition, Defendant contends that most of Plaintiff's inpatient admissions during the relevant period were related to drug use, and that those hospitalizations and relapses were the basis for the ALJ providing for off-task and absence limitations in his original RFC. *Id.* at pp. 7-8. Defendant further argues that any error the ALJ allegedly made in determining Plaintiff did not meet any of the Listings would be harmless because the ALJ found her DAA prevented her from being awarded benefits, and the ALJ ultimately found Plaintiff was disabled during the first application of the sequential evaluation. *Id.* at pp. 12-14. Finally, Defendant contends that the ALJ's evaluation was proper, and that the Court should not re-weigh the evidence. *Id.* at pp. 14-16.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

> gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

"When there is medical evidence of an applicant's drug or alcohol abuse, the inquiry does not end with the five-step analysis.  An individual shall not be considered . . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  *Olmstead v. Comm'r of Soc. Sec.*, 2015 WL 9581833, at *4 (N.D.N.Y. Dec. 30, 2015) (quoting *Cage v. Comm'r*, 692 F.3d 118, 123 (2d Cir. 2012) (internal citations and quotation marks omitted)).  "Accordingly, if the ALJ finds that the plaintiff is disabled utilizing the standard sequential analysis, and there is medical evidence of the plaintiff's drug addiction or alcoholism, the ALJ must then determine whether he would still find the plaintiff disabled if he stopped using drugs or alcohol.  As part of his general burden to prove that he is disabled, the plaintiff bears the burden of proof to show that his drug addiction or alcoholism is not material to his disability."  *Id.* (citing *DiBenedetto v. Colvin*, 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014); *Cage v. Comm'r*, 692 F.3d at 123-25) (internal citation omitted)).

# III. ANALYSIS

## A. The ALJ's Finding that Plaintiff's DAA is Material

Plaintiff first contends that the ALJ incorrectly determined that Plaintiff's substance abuse disorder is material to her disability; she argues that her mental health causes significant limitations that the ALJ overlooked. Pl.'s Mem. of Law at pp. 22-25. Plaintiff contends that the ALJ failed to state whether Plaintiff's other impairments would improve to the point of non-disability in the absence of DAA, and contends that if the evidence does not establish that Plaintiff's condition would improve without DAA, then DAA is not material, pursuant to SSR 13-2p. *Id.*

"The key factor [the SSA] will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [it] would still find [a claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1).

The burden to demonstrate that DAA is not material rests with the claimant. The Social Security Administration ("SSA") has published some guidance seeming to indicate that this is not the case, "i.e., that 'a tie goes to [the claimant.]'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 123-24 (quoting *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)). *See* SSR 13-2p, 2013 WL 621536, at *9 (S.S.A.)) ("We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would

improve to the point of nondisability in the absence of DAA."). However, the Second Circuit has made clear that in this Circuit the claimant bears the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 123-24 (finding internal SSA document unpersuasive which provides, in part, that "[s]ince a finding that DAA is material will be made only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol, the [ALJ] will find that DAA is not a contributing factor material to the determination of disability.").

Plaintiff notes that Dr. Stack, the psychiatric consultative examiner, opined limitations that corroborated Plaintiff's testimony, indicating that Plaintiff's mental health problems cause significant limitations. Pl.'s Mem. of Law at p. 23. Dr. Stack opined a moderate impairment in Plaintiff's ability to maintain a regular schedule and a marked impairment in her ability to relate adequately to others, and opined that her limitations were caused by her mental conditions. Tr. at p. 376. The ALJ considered Dr. Stack's opinion. He described that Plaintiff reported her history of substance abuse to Dr. Stack, but denied any current use; that Dr. Stack found her to have below average cognitive functioning and fair insight/judgment, but that the mental status examination was otherwise unremarkable; and that Dr. Stack diagnosed Plaintiff with specific learning disorder, rule out bipolar I disorder, bipolar II disorder, rule out panic disorder, rule out PTSD, opioid use disorder and unspecified personality disorder. Tr. at p. 17. Plaintiff recounts that Dr. Stack opined that her impairments are caused by symptoms of mental health conditions. Pl.'s Mem. of Law at p.

23 (citing Tr. at p. 376). Plaintiff contends that Dr. Stack's findings support her testimony regarding her impairments. However, such findings were based upon Plaintiff's self-report that these deficits were caused by her mental health, not substance abuse, problems. *See*, *e.g.*, Tr. at p. 372 ("She has been hospitalized three times in year 2014 so far . . . . She notes that she has a 'nervous breakdown' and feels safer at the hospital, so she self admits herself. She was not aware of any diagnoses that the hospital was discharging her with.").

Plaintiff also contends that the ALJ is required to consider the claimant's ability to function outside of a highly structured setting, because being placed in a hospital can improve symptoms. Pl.'s Mem. of Law at pp. 23-24. "Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use." SSR 13-2p, 2013 WL 621536, at *12 (S.S.A.). "In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." *Id.* at *13.

However, "a comparison of medical opinions during a period when a claimant was using [ ] to 'periods of sobriety,' even brief ones such as during hospitalization, constitutes substantial evidence to support a determination that a claimant would not be disabled were she to stop using drugs or alcohol." *Rowe v. Colvin*, 2016 WL 5477760, at *8 (N.D.N.Y.

Sept. 29, 2016) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 127); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d at 127 ("While the record does not reveal any extended periods of sobriety during the relevant period following Cage's May 2004 application date, it does include, *inter alia*, positive evaluations of Cage conducted during inpatient admissions when Cage did not have access to drugs or alcohol.").

Here, the ALJ was able to review Plaintiff's symptoms when she was using drugs and when she was not after various inpatient admissions. *See Zukowski v. Berryhill*, 2018 WL 1325875, at *16 (N.D.N.Y. Mar. 13, 2018). The ALJ recounts various of Plaintiff's inpatient treatments which demonstrate a change in Plaintiff's functioning following brief hospitalizations: an early 2014 admission to the emergency department for suicidal thoughts and assaulting her boyfriend, where after being treated for several days and upon sobriety Plaintiff's mental status examination was essentially normal and she exhibited normal cognitive functioning (Tr. at pp. 15-16); a May 2014 admission where Plaintiff sought substance abuse rehabilitation, and after several days, her functional abilities significantly improved, as did her outlook and suicidality (she was alert and well-oriented, largely cooperative, displayed no evidence of perceptual disturbances, denied suicidal ideation, and had focused thought processes) (Tr. at p. 16); a June 2014 treatment for addiction and mental health symptoms, where her drug screen on admission was positive for benzodiazepines and cannabinoids, and she rapidly improved, and denied any mood, anxiety or psychotic symptoms for the last two days of the stay (*Id.*); a nine-day August 2015 hospitalization

caused by drug abuse (Tr. at p. 17); an October 2015 hospitalization where Plaintiff's mental status examination was normal at discharge (*Id.*); and March 2016 mental health treatment after an overdose/suicide attempt, where after several days Plaintiff was released in improved condition (Tr. at p. 18). There is substantial evidence in the record that supports the ALJ's determination, due to the fact that it is the claimant's burden to demonstrate that DAA is not material to the finding of disability.

### B. The ALJ's Analysis of the Medical Evidence

Plaintiff contends that the ALJ failed to properly analyze the medical evidence. Pl.'s Mem. of Law at pp. 25-27. Plaintiff contends that the ALJ cherry picked portions of medical opinions to give weight to, by giving varying amounts of weight to different portions of the opinions of Dr. Alpert, Dr. Stack, and Rudy Kvenvik. *Id.*

Cherry picking "refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015). "'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion." *Strange v. Comm'r of Soc. Sec.*, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014). Plaintiff takes issue with the ALJ giving portions of the opinions varying weight; however, the ALJ explained why he gave the various portions varying weight.

First, "an ALJ is not required to accept or reject a medical opinion in its entirety." *Howe v. Colvin*, 2013 WL 4534940, at *14 (S.D.N.Y. Aug. 27, 2013). The ALJ explained that he gave Dr. Alpert's opinion partial weight when considering all of Plaintiff's impairments, finding Plaintiff would have a more limited RFC than opined by Dr. Alpert. Tr. at p. 18. The ALJ assigned the opinion great weight as pertains to Plaintiff's functional abilities without DAA, though, finding it to be consistent with her functional abilities when not considering her substance abuse. *Id.* As to Dr. Stack's opinion, the ALJ similarly assigned it little weight when considering all of Plaintiff's impairments, as the ALJ found she would require absences and time off task, but assigned it more weight when considering Plaintiff's functional abilities without DAA. Tr. at pp. 18-19. In addition, the ALJ assigned the limitations as to social functioning little weight when not considering her substance abuse, as her testimony indicated that her interpersonal abilities remain relatively intact, with or without substance abuse. As to Rudy Kuvernik, LCSW, the ALJ assigned great weight to the finding that Plaintiff would be absent four or more times per month, and great weight to his findings regarding the paragraph B criteria when not considering Plaintiff's DAA, but less when considering the DAA, which would result in significant time off task and absences. The ALJ considered these opinions and described his basis for discounting portions of them; it is for the ALJ to weigh medical opinions, and the Court will not reweigh these opinions where the ALJ has properly considered them and his analysis reflects that consideration by providing sufficient reasons for rejecting any unsupported limitations therein. *See Hofacker*

*v. Weinberger*, 382 F. Supp. 572, 576 (S.D.N.Y. 1974); *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 ("[A]n administrative law judge must have a sound reason for weighting portions of the same-source opinions differently.").

Plaintiff states that the ALJ noted Plaintiff's difficulties in July 2014, and noted that it was unclear whether Plaintiff was abusing substances at that time. Pl.'s Mem. of Law at p. 25. Although this contention is undeveloped, the implication is presumably that if Plaintiff was not using drugs at that time, that would support a finding that her DAA is not material to her disability. The record is often unclear whether Plaintiff was using drugs at certain times; the ambiguity in July of 2014 does not render the determination invalid. In any event, the ALJ did have Plaintiff's brief periods of sobriety during and after inpatient treatments that he could use to compare Plaintiff's functioning, where it was more clear whether Plaintiff was abusing drugs. *See Rowe v. Colvin*, 2016 WL 5477760, at *8.

Plaintiff further contends that, in finding Plaintiff not fully credible, the ALJ failed to consider the intensity and persistence of symptoms, side effects of medications, the likely waxing and waning of symptoms over time, and her persistent efforts to obtain relief from pain. Pl.'s Mem. of Law at p. 26. In particular, Plaintiff asserts that she was hospitalized at least twelve times during the relevant period, and that the ALJ did not sufficiently consider this. The record shows the hospitalizations, and the ALJ recounted them; he found Plaintiff to be unable to perform any work when considering all of her impairments, based in large part on these hospitalizations. Tr. at pp. 14-17 (describing a number of hospitalizations for

mental health and substance abuse treatment). The ALJ also noted that there was no significant treatment in between September 2014 and early 2015 or in February, May and June 2015, and mental status examinations were all relatively normal during these times; there was no clear evidence of drug/alcohol abuse during the latter period. Tr. at p. 17. The ALJ's discussion makes clear that he did consider the entire record.

## C. The ALJ's Determination as to the Listings

Finally, Plaintiff contends that her impairments met or medically equaled Listings 12.04, 12.06, 12.08, and/or 12.09.

First, Plaintiff contends that SSR 96-6p required an updated expert opinion on equivalence. Pl.'s Mem. of Law at p. 24. Plaintiff does not explain why an updated expert opinion would be necessary in this case. "The relevant portions of SSR 96-6p explain that 'longstanding policy requires' an ALJ to receive into the record as expert opinion evidence, the judgment of a State agency physician or psychologist on the issue of whether a claimant's impairments are equivalent to a listed impairment." *Van Valkenberg ex rel. B.G. v. Astrue*, 2010 WL 2400455, at *17 (N.D.N.Y. May 27, 2010), *report and recommendation adopted sub nom. VanValkenberg ex rel. B.G. v. Astrue*, 2010 WL 2400443 (N.D.N.Y. June 10, 2010) (quoting SSR 96-6p, 1996 WL 374180, at *3 (S.S.A.)). This was done in the present case. Tr. at p. 124. The regulation requires that an ALJ obtain an updated medical opinion from a medical expert if "either (1) no additional evidence is received but the ALJ believes the record suggests equivalence, or (2) additional evidence is received 'that in the opinion of the

[ALJ] . . . may change the State agency medical or psychological consultant's finding.'" *Id.* (quoting SSR 96-6p, 1996 WL 374180, at *4). "[I]n either condition, obtaining an updated opinion from a medical expert depends upon the ALJ reaching the opinion that the claimant's impairments could be equivalent to a listing. Thus, . . . the Court must conclude that seeking additional evidence from a medical expert was within the discretion of the ALJ and the Court can find no error in the ALJ's exercise of that discretion in this case." *Id.*; *see also Hanlon v. Comm'r of Soc. Sec.*, 2010 WL 5285311, at *4 (N.D.N.Y. Dec. 17, 2010).

As to Plaintiff's contention that the ALJ improperly analyzed whether her conditions meet or medically equal the Listings, to satisfy the requirements for these Listings, the claimant must demonstrate that she meets a number of specific criteria, which are listed in lettered paragraphs.

The ALJ performed a thorough analysis of the paragraph B criteria. He found that, considering all of Plaintiff's impairments, she has mild restriction in activities of daily living, based upon her self reported daily activities and abilities. Tr. at p. 13. In social functioning, the ALJ found Plaintiff has moderate difficulties, based upon her characterization of her personal relationships, her daily activities that required social interaction, and her interaction with physicians. *Id.* The ALJ found Plaintiff has marked difficulties in concentration, persistence or pace, based on her mental status examinations, and based upon finding that she would be off-task an excessive portion of an eight-hour workday due to her frequent in-patient hospitalizations and detoxifications and frequent substance abuse. *Id.* The ALJ

found Plaintiff has experienced no episodes of decompensation of extended duration, and found that Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation. Tr. at pp. 13-14. When considering Plaintiff's limitations if she stopped the substance use, the ALJ found that she would still not have an impairment or combination of impairments that meets or medically equals an impairment contained in the Listings. Tr. at p. 21. Based upon her mental status examinations and treatment notes from a period when she was sober, the ALJ found Plaintiff would continue to have mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence and pace. *Id.* The ALJ further found there would be no need for excessive off-task time or work absences if Plaintiff were abstinent. *Id.* The ALJ also found that she would experience no episodes of decompensation, noting that the vast majority of Plaintiff's hospitalizations were directly attributable to her substance abuse, and that none of those hospitalizations were of an extended duration. Tr. at p. 22.

Plaintiff contends that the ALJ's determinations regarding her activities of daily living and her maintenance of social functioning were flawed, as the record contained evidence that could support a finding of greater impairment. Pl.'s Mem. of Law at pp. 27-29. However, the ALJ's determinations were supported by substantial evidence in the record, which he identifies in his determination. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *see also Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) ("The Secretary's finding will be sustained if supported by substantial evidence, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Secretary's.") (internal citations omitted).

Plaintiff also contends that the ALJ ignored Paragraph C of Listings 12.04 and 12.06 in making his determination. The ALJ did not address these criteria. Tr. at pp. 13-14 & 21-22. One of the ways a claimant can demonstrate she meets Listing 12.04 is to demonstrate that her impairment satisfies paragraph C, which requires demonstrating:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. In order to demonstrate a claimant meets or medically equals Listing 12.06, a claimant can demonstrate that she has one of a number of behaviors or symptoms (listed in Paragraph A) that, as per Paragraph C, "result[s] in complete inability to function independently outside the area of one's home." *Id.* The ALJ did not discuss any

of the above Paragraph C criteria in his determination.  Tr. at pp. 13-14; 21-22 (only discussing Paragraph B criteria).[3]

The Second Circuit has stated that "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982).  However, a court may "uphold an ALJ's conclusion . . . in the 'absence of an express rationale . . . [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.'" *Perozzi v. Berryhill*, 287 F. Supp.3d 471, 482-84 (S.D.N.Y. 2018) (quoting *Berry v. Schweiker*, 675 F.2d at 468).  However, "where 'credibility determinations and inference drawing is required of the ALJ' to form his conclusion at step three, then remand for the ALJ to explain his reasoning is required." *Perozzi v. Berryhill*, 287 F. Supp.3d at 483 (quoting *Berry v. Schweiker*, 675 F.2d at 469).

Here, the ALJ does not discuss the Paragraph C criteria at all, and does not discuss the items considered in Paragraph C elsewhere in his determination.  As such, it is impossible for the Court to determine whether the ALJ's determination as to these items was based on substantial evidence.  *See Norman v. Astrue*, 912 F. Supp. 2d 33, 41 (S.D.N.Y. 2012) ("[I]t is unclear from the ALJ's decision which criteria of [the listing] . . . the plaintiff failed to

---

[3] Given the ALJ's finding that Plaintiff did not meet the Paragraph B criteria, it was necessary that he discuss the Paragraph C criteria to determine whether her impairments meet or medically equal these Listings.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.04 Affective Disorders ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.06 Anxiety Related Disorders ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.").

meet—or, for that matter, whether the ALJ even applied [the listing] to the plaintiff's impairments."). In addition, because of the nature of Plaintiff's mental health and substance abuse disorders and the at times conflicting information in the record, the ALJ would need to engage in "credibility determinations and inference drawing" to evaluate these factors. *Perozzi v. Berryhill*, 287 F. Supp.3d at 483 (quoting *Berry v. Schweiker*, 675 F.2d at 469). As such, there is not "'sufficient uncontradicted evidence' that the ALJ's decision was supported by substantial evidence," and thus remand is required for the ALJ to explain his reasoning. *Norman v. Astrue*, 912 F. Supp. 2d at 41 (citing *Sava v. Astrue*, 2010 WL 3219311 (S.D.N.Y. Aug. 12, 2010)).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon

the parties to this action.

Date:  January 7, 2019
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge